

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
GREENVILLE DIVISION

| | |
|---|---|
| LEON EDWARDS,  §<br>        Plaintiff,  §<br>  §<br>vs.  §<br>  §  Civil Action No. 6:20-02749-MGL<br>JAMES PARRISH, O. COLBERT, J. BROWN, §<br>DAYSHAWN JOHNSON, and  §<br>M. CLEVELAND,  §<br>        Defendants.  § | |

**ORDER ADOPTING THE REPORT AND RECOMMENDATION
AND GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR
SUMMARY JUDGMENT**

Plaintiff Leon Edwards (Edwards), proceeding pro se, filed this civil action against James Parrish (Parrish), O. Colbert (Colbert), J. Brown (Brown), Dayshawn Johnson (Johnson), and M. Cleveland (Cleveland) (collectively, Defendants), alleging violations of his constitutional rights under 42 U.S.C. § 1983, and seeking damages. Specifically, Edwards alleges claims of deliberate indifference and excessive force in violation of his Eighth Amendment Constitutional rights.

This matter is before the Court for review of the Report and Recommendation (Report) of the United States Magistrate Judge recommending the Court grant Defendants' motion for summary judgment as to Edwards's deliberate indifference claim and deny it as to his excessive force claim. The Report was made in accordance with 28 U.S.C. § 636 and Local Civil Rule 73.02 for the District of South Carolina.

The Magistrate Judge makes only a recommendation to this Court. The recommendation has no presumptive weight. The responsibility to make a final determination remains with the Court. *Mathews v. Weber*, 423 U.S. 261, 270 (1976). The Court is charged with making a de novo determination of those portions of the Report to which specific objection is made, and the Court may accept, reject, or modify, in whole or in part, the recommendation of the Magistrate Judge or recommit the matter with instructions. 28 U.S.C. § 636(b)(1). The Court need not conduct a de novo review, however, "when a party makes general and conclusory objections that do not direct the court to a specific error in the magistrate's proposed findings and recommendations." *Orpiano v. Johnson*, 687 F.2d 44, 47 (4th Cir. 1982).

The Magistrate Judge filed the Report on January 24, 2022, and Defendants objected on February 7, 2022. The Court has reviewed the objections, but holds them to be without merit. It will therefore enter judgment accordingly.

The Court will briefly summarize the facts of the case here. Edwards's claims arise from an incident and its aftermath at his place of imprisonment, Broad River Correctional Institution (Broad River), which is part of the South Carolina Department of Corrections.

Although the precise events of the incident are disputed, on June 28, 2019, Edwards ran from his cell and there was a scuffle with Officer Shaqui Cabbagestalk (Cabbagestalk). Defendants then arrived. Parrish administered chemical munitions. Edwards claims Cleveland threw him to the ground, and various Defendants punched and kicked him and intentionally let his head hit the ground. Defendants then took Edwards to the Restricted Housing Unit (RHU). He also alleges Defendants, including Brown, intentionally injured him while carrying him to the RHU. Upon arrival at the RHU, Edwards claims Cleveland then slammed him to the ground, and Cleveland and Johnson punched him and yelled threatening comments. He also attests Cleveland

and Colbert kicked and stomped on him.  Finally, he contends Defendants returned to his holding cell in the RHU twice more and assaulted him each time.

The Richland County Solicitor's office subsequently charged Edwards with assault and battery third degree, as well as rioting or inciting prisoners to riot.  Edwards pled guilty to rioting or inciting prisoners to riot.

Defendants make three objections.  As to the first objection, Defendants argue the Court should grant summary judgment because Edwards failed to exhaust his administrative remedies.

Edwards filed a Step 1 grievance alleging deliberate indifference to his medical needs stemming from the incident.  This grievance was rejected as untimely.  It was neither marked as "processed" or "unprocessed."  Edwards next filed another Step 1 grievance complaining excessive force was used against him.  This grievance was returned to him, marked as "processed," with an indication that it was duplicative of his previous grievance.  Finally, Edwards filed a third Step 1 grievance, stating he was appealing the decision, insisting the excessive force grievance was not duplicative.  Edwards filed neither a Step 2 form nor a Request to Staff Member (RTSM) form to appeal.

As the Magistrate Judge aptly explained, "an administrative remedy is not considered to have been available if a prisoner, through no fault of his own, was prevented from availing himself of it." *Moore v. Bennette*, 517 F.3d 717, 725 (4th Cir. 2008).  In this case, administrative remedies may have been unavailable because the process was "so opaque that it becomes, practically speaking, incapable of use" or because "prison administrators thwart[ed] [Edwards] from taking advantage of a grievance process through machination, misrepresentation, or intimidation." *See Ross v. Blake*, 578 U.S. 632, 643–44 (2016) (explaining when "rules are so confusing that no

reasonable prisoner can use them then they're no longer available." (internal quotation and alterations omitted)).

The appeals process for a "processed" Step One form and an "unprocessed" Step One form, according to the South Carolina Department of Corrections (SCDC) Policies, differ. And the demarcation of "processed" or "unprocessed" on Edwards's grievances is inconsistent—or at the very least, evades common-sense—giving rise to confusion as to the proper approach he should take.

Moreover, Defendants' evidence has muddied the waters. Assuming Edwards's second grievance was correctly marked as "processed," the SCDC Policies seem to indicate a Step Two would be the only permissible method of appeal. Yet Sherman L. Anderson's declaration, submitted by Defendants, states Edwards could have filed either a RTSM form or a Step Two form. That conflicting instructions exist bolsters Edwards's argument that the process was unavailable to him.

True, Edwards filled out neither form, instead attempting to appeal through a third Step One form. Although this is precluded by the policies, given the confusion over what is permitted, the Court agrees a genuine issue of material fact exists as to whether the process "so opaque" as to become "incapable of use." *Ross*, 578 U.S. at 643–44.

Moreover, Edwards presents evidence he was refused a Step Two form. This further establishes a question as to whether "prison administrators thwart[ed] [Edwards] from taking advantage of a grievance process through machination, misrepresentation, or intimidation." *Ross*, 578 U.S. at 643–44.

4

Taken together, the Court agrees with the Magistrate Judge there is a genuine issue of material fact as to whether administrative remedies were available to Edwards. Consequently, the Court will overrule Defendants' first objection.

Turning to Defendant's second objection, Defendants contend the Court should grant summary judgment for Edwards's excessive force claim against Colbert, Johnson, Brown, and Cleveland because Edwards has failed to present sufficient evidence as to their personal involvement. They argue Edwards's involvement in the attack against Cabbagestalk shows Defendants used no excessive force. That Edwards was involved in the incident with Cabbagestalk—and, undoubtedly, committed some wrongdoing—fails to eliminate the possibility Defendants used excessive force, even if Edwards's own misconduct was the source of some of his alleged injuries.

Further, Edwards has presented sworn evidence that contradicts Defendants' contentions as to the events of the day in question. He has also pointed to inconsistencies in Defendants' evidence that undermine their claimed version of events. In addition, Edwards's evidence indicates Colbert, Johnson, Brown, and Cleveland had personal involvement in the alleged excessive force used against him.

Although Defendants avouch Edwards's evidence is self-serving, the same can be said about much of Defendants' evidence. The Court leaves the task of weighing the credibility of the evidence to the finder of fact. *See Anderson v. Liberty Lobby*, 477 U.S. 242, 255 (1986) ("Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge[.]").

Therefore, because there is a genuine issue of material fact as to Welch's excessive force claim, the Court will also overrule Defendants' second objection to the Report.

Finally, as to Defendants' third objection, they insist the Magistrate Judge erred in recommending against summary judgment for Parrish, who Edwards claims supervised the other Defendants. There are four subparts to this objection.

First, Defendants contend Edwards fails to properly plead supervisory liability in his complaint. But, in Edwards's Complaint, he alleges Parrish watched his subordinate officers use excessive force against Edwards and failed to intervene. The Court agrees with the Magistrate Judge that the Complaint, liberally construed, is sufficient to bring a Section 1983 action under a theory of supervisory liability. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007) ("A document filed *pro se* is 'to be liberally construed,' and 'a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers[.]'" (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)) (internal citation omitted)).

Second, Defendants contend Edwards has failed to provide evidence Parrish had supervisory authority over the other Defendants. As the Magistrate Judge noted, however, Edwards's response to Defendants' motion explains the applicable chain of command. Edwards states that "all issues in regard[]s to anything dealing with security that's reported by a[n] inmate or a staff member must go to the major first. The major is the supervisor of all security officers at a[n] institution." Edwards's Response at 5. Even if that explanation were not enough, though, Edwards also provides evidence of Parrish providing direction to Defendants. *See* Lane Decl. at 2 (Parrish "told them to pick the inmates up [and] take them out the building."). Parrish's rank, combined with evidence he exercised control over the other Defendants, create a genuine issue of material fact as to Parrish's supervisory authority.

Third, Defendants argue the Magistrate Judge incorrectly applied the elements of supervisory liability to the facts on the record. Defendants provide no analysis. The Court

6

considers this objection conclusory. The Court thus need only review this part of the Report for clear error. *See Orpiano*, 687 F.2d at 47 (The Court need not conduct a de novo review "when a party makes general and conclusory objections[.]"). And, simply put, there is no clear error in the Magistrate Judge's discussion of the supervisory liability elements in this case.

Lastly, Defendants insist Parrish should be entitled to qualified immunity. The Magistrate Judge, however, correctly concluded there is a genuine issue of material fact as to qualified immunity. *See Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982) (Qualified immunity protects officials who "violate clearly established statutory or constitutional rights of which a reasonable person would have known.").

As discussed above, there is a genuine issue of material fact as to whether a constitutional violation occurred. There is evidence from which a jury could reasonably conclude Parrish sat by and watched as officers slammed Edwards to the ground, punched and kicked him numerous times, and then allowed those same officers to drag him to the Restricted Housing Unit. *See Hudson v. McMillian*, 503 U.S. 1, 9 (1992) ("When prison officials maliciously and sadistically use force to cause harm, contemporary standards of decency are always violated.").

The case law clearly establishes a person's right to protection from such "deliberate indifference" or "tacit authorization" by supervisors of officers. *See Shaw v. Shroud*, 13 F.3d 791, 799 (4th Cir. 1994) (setting forth the standard for supervisory liability); *see also Buonocore v. Harris*, 65 F.3d 347, 359–60 (4th Cir. 1995) ("If a plaintiff has alleged a clearly established right, summary judgment on qualified immunity grounds is improper as long as there remains any material factual dispute regarding the actual conduct of the defendants.").

For all these reasons, the Court will also overrule Defendants' third objection.

After a thorough review of the Report and the record in this case under the standard set forth above, the Court adopts the Report to the extent it does not contradict this Order and incorporates it herein. Therefore, it is the judgment of the Court Defendants' motion for summary judgment is **GRANTED** as to Edwards's deliberate indifference claim and **DENIED** as to Edwards's excessive force claim. The Court will address Edwards's motion for appointment of counsel by separate order.

**IT IS SO ORDERED**.

Signed this 8th day of June 2022, in Columbia, South Carolina.

s/ Mary Geiger Lewis
MARY GEIGER LEWIS
UNITED STATES DISTRICT JUDGE

\*\*\*\*\*
**NOTICE OF RIGHT TO APPEAL**

The parties are hereby notified of the right to appeal this Order within thirty days from the date hereof, pursuant to Rules 3 and 4 of the Federal Rules of Appellate Procedure.